PITMAN, J.
LA nonunanimous jury convicted Defendant Kevin .Porter as charged of aggravated rape. The trial court sentenced him to the mandatory term of life imprisonment. Defendant appeals. For the following reasons, we affirm Defendant’s conviction and sentence.

FACTS

On July 19, 2012, -the state filed a secret indictment charging Defendant with one count of aggravated rape in violation of La. R.S. 14:42(A)(4), stating that, during the year 2010, Defendant committed, aggravated rape in that he had sexual intercourse with R.S.,[1] whose.date of birth is March 16, 1998, without her lawful consent because she was under the age of 13 at the time. On August 14, 2Ó12,. Defendant pled not guilty. A jury trial began on March 9, 2015.
Warren Saucier testified that in 2010, he .was the principal of the school R.S. attended, Charlotte Mitchell Bossier Achievement Center. He stated that, on October 25, 2010, Defendant called him and told him that R.S., who is Defendant’s stepdaughter, was pregnant by a family member. Principal Saucier stated that he advised Deféhdant to réport this to the police. He then reported this information to the school counselor, Sheila Autry, and to the Student Resource Officer (“SRO”) Jackie Loveless, who is á police officer and overheard the phone call. He further stated that he also called R.S.’s mother and told her about the phone call from D¿-fendant. Principal Saucier testified about the procedure for a person to check out a student from school. He noted that, between August' 30, 2010,' and ^October 25, 2010, school records show that, on September 28, 2010, Defendant checked R.S. out from school and that, on October 25, 2010, David Morgan checked her out from school.[2] Principal Saucier stated that it is possible that the checkout of a student would not be noted in the school records if the student was suspended for disciplinary reasons. He noted that R.S. was suspend *156 ed on October 20, 2010, and that Defendant picked her up from school that day.
SRO Loveless of thé Bossier Parish Sheriffs Office testified that he has been the SRO to Charlotte Mitchell Bossier Achievement Center in Bossier Parish since 2009 ' or 2010. He noted that, in 2010, he entered the principal’s office and overheard a conversation Principal Saucier was having over speaker phone. The conversation was about R.S. and he recalled that he heard a man say that something had happened at his household and he had moved out, that some type of activity was going on between an adult and a child and that a young girl was pregnant.
J.S.[3] testified that she is the former wife of Defendant and the adoptive mother of R.S. She stated that she is the biological mother of David Morgan and the adoptive mother of S.M.S.,[4] who is her biological niece and R.S.’s biological mother, and “Judy-Pie,” who is also S.M.S.’s biological daughter. She stated that she adopted S.M.S. as an adult and that US.M.S. lived with her at times and helped care for R.S. and Judy-Pie. She testified that she married Defendant on October 5, 2010, after meeting him in 2009. She, Defendant, R.S. and Judy-Pie all lived together and Defendant, being unemployed, cared for the girls while she was' at work. She stated that, around October 20, 2010, she asked Defendant to move out of their home after the girls told her that he was mean to them and “swatted” or hit one of them. She noted that, after Defendant moved out of their home, he continued to stop by her house, knock on the window or door , and ask R.S. to let him in. As a result, she obtained a protective order against Defendant.
J.S. further testified that, on October 25, 2010, she received a phone call at work from Principal Saucier who told her that he had received a phone call from Defendant, who had stated that J.S.’s brother had raped her daughter, and gotten her pregnant. She called 911 and made a report. She stated that she then went home and waited for the police to arrive. Once the police arrived, she and R.S, each spoke with them. She testified that the police officers inquired about the whereabouts of Defendant, which confused her because Principal Saucier had mentioned her brother, Mark Morgan, as the person who had raped-R.S. The police officers spoke with R.S. again and she told them that Defendant was the one who had been “messing with” her. J.S. stated that she then took R.S. to the hospital for an exam and a pregnancy test, which indicated that R.S. was not pregnant. She noted that the doctor did not conduct a rape examination because of R.S.’s young age. She testified that, as part of the investigation, R.S. was | interviewed at the Gingerbread House and revealed that S.M.S., her biological mother, also1 sexually abused her. S.M.S. pled guilty to that allegation and is currently serving time in a detention center. J.S. further testified that R.S. suffers from ADHD and bipolar disorder and attends special education classes at school. She described R.S., who was 16 years old at the time of trial, as acting childlike and not functioning as a normal 16-year-old. She stated that R.S.’s grades had suffered as a result of the abuse and, that she had failed a grade level in school. Due to that abusé, she and R.S. relocated out Of state and R.S. is now doing well in school.
J.S. also testified that, in 1998 or 1994, she accused S.M.S. of molesting her son, *157 David Morgan, after she saw a photograph of S.M.S. “doing something” to him. She also had accused her ex-husband, Raymond Stokes, of fondling her .nephew Je-drick, who is S.M.S.’s son. She denied accusing family friend O’dell Maxwell of molesting any of her children. She stated that, in the 1980s, she had accused her boss, Richard Johnson, of touching her and that the matter was settled out of court.
R.S., whose birthday is March 16, 1998, testified that Defendant is her stepfather. She stated that, after Defendant married her mother in October 2010, her mother asked him to leave the home after she told J.S. that Defendant had slapped her and put his hands on her. She testified that, in October 2010, Defendant brought her home from school when she was suspended. They went straight home and no one else was there. She stated that Defendant told her to go to her bedroom, followed her into the room and told her to.remove her clothes. When she asked why she had to remove | fiher clothes, Defendant took a gun out of his pocket and said, “Remove your clothes now.” She stated that she complied and then Defendant “forced hisself [sic] on top, as to taking his penis and inserting it into my vagina, which I told him, it hurts.” Defendant responded that it was punishment for misbehaving in school. She stated that Defendant then left the room and' she remained in the room crying. She was afraid to tell her mother what had happened because Defendant threatened to “kill [her] whole family” if she said anything. She also stated that Defendant raped her again on a subsequent day. He raped her vaginally and forced his penis into her mouth, telling her to “watch me grow.” She stated that Defendant anally raped her on another occasion. She further stated that the abuse continued until J.S. received a telephone call from her school advising that her teacher had told SRO Loveless that she was acting strangely, which led to SRO Loveless- speaking to Principal Saucier, who called J.S. She noted-that Principal Saucier told J;S. that her uncle had gotten her pregnant, but she clarified at trial that her uncle never sexually abused her. She recalled being interviewed at the Gingerbread House and testified that she told the interviewer that S.M.S., her biological mother, forced her (R.S.) to put her mouth on her (S.M.S.) and that .S.M.S. put her mouth on her (R.S.’s) vagina. She also noted that she told the interviewer that Defendant forced himself on her. She further stated that she was -examined by a doctor.
' Corporal Charles 'Ainsco of the' "Shreveport Police Department testified that he responded to J.S.’s house regarding a juvenile molestation.. He spoke with J.S. and then contacted Det. Jeff Allday of the sex crimes Indivisión of the police department. He stated that he then spoke with R.S., who told him that, on October 19, 2010, Defendant checked her out from school, brought her home and had intercourse with her. He .also stated that J.S. told him that she recently kicked Defendant out of the home for yelling at R.S. and she also provided him with a possible address for Defendant. He recalled that he told. J.S. she could take R.S. to the hospital and that he then contacted Child Protective Services.
S.M.S. testified that she is currently incarcerated for a charge she pled guilty to involving R.S. She stated that she is afraid of J.S. because J.S. was. very abusive. She also stated that shq is afraid of Defendant. She further testified that she told police officers that Defendant came to her house and told her that he was .going to be arrested for raping R.S. and that he was sorry for what happened.
*158 Dr. Sheila Farrell testified that she is the medical director of the CARA Center, a medical facility where abused or neglected children are evaluated. She stated that she met with R.S. on November 8, 2010, recalling that R.S. told her that there was genital-to-genital contact with Defendant on more than one occasion and that she bled as a result. She also stated that R.S. told her that S.M.S. had "licked her genitals. She then performed an examination of R.S and explained that, if children are not examined within a week of the sexual abuse, there is often no physical evidence because bruising and bleeding heal. Evidence of healed cuts or tears can be observed. She testified that R.S. had a healed complete transection, i.e., a healed tear, at the 7:00 position of her hymen and that this |7is a sign of penetration and trauma, i.e., injury. She stated that, based on R.S.’s history and the physical examination, she found that there had been sexual abuse.
Michelle Vrana, the DNA Section Supervisor at the North Louisiana Crime Lab, testified generally about DNA degradation over time.[5] She explained that the chance of finding foreign DNA on a person is “slim” when five to sevén days have passed since the contact with the foreign DNA. More specifically, she opined that it would be “[n]ot likely at all” to find DNA from a sexual assault occurring on October 25, 2010, if the examination was not performed until November 8,2010.
Det. Alday of the Sex Crimes Unit of the Shreveport Police Department testified that he was the lead investigator in this case. He stated that, on the day after Cpl. Ansco contacted him about the reported sexual assault, he met with Principal Saucier, who told him that, on October 20, 2010, Defendant picked up R.S. from school because she had been suspended. Principal Saucier also told him about the phone call he received from Defendant on October 25 wherein Defendant told him that R.S. was pregnant either by David Morgan or by a “retarded boy.”
Det.' Alday testified that he set up an appointment for R.S’. to be interviewed at the Gingerbread House on December 14, 2010. He stated that he did not conduct the interview, but observed it on closed-circuit television.' R.S. stated that, on October 21,' Defendant picked her up from school, brought her home, told her to go to her room, removed his clothing | Rand then vaginally raped her. He noted that R.S. described how she was raped and that she could recall the brand of the condom he used. He stated that, during the interview, R.S. disclosed that, on a different day, she awoke to Defendant sexually assaulting her and that he forced her to perform oral sex on him and told her to “watch it grow.” He noted that R.S. stated that Défendant used a weapon, a dark gray gun with a black handle, to force her to have sex with him.' He further stated that, during the interview, R.S. also 'disclosed that her biological mother, S.M.S., had also sexually assaulted her. Det. Al-day further testified that he also spoke with J.S. during the investigation, noting that she showed him text messages on her phone between herself and S.M.S. that occurred on December 15, 2010, wherein J.S. accused S.M.S. and Defendant of sexually abusing R.S. S.M.S., apologized for her part, and referenced Defendant by texting: “[i]f I get trouble u would nt care any way just as long as ur husband u want to keep him on dried land and messy overme I knew u hate but not like.”
Det. Alday testified that he also interviewed S.M.S., which recording was played in open court. In her post-Miranda state *159 ment, she confessed to performing oral sex on R.S. when R.S. was nine years old. She also stated that Defendant came to her house in October 2010 and admitted to raping R.S. Court documents introduced into evidence demonstrate that S.M.S. pled guilty to aggravated incest for her sexual abuse of R.S.
Det. Allday also testified that he interviewed Defendant, and this interview was played in open court.[6] After waiving his Miranda rights, ^Defendant consented to giving a DNA sample. He repeatedly denied having sex with R.S., but did state that he picked her up from school on October 20, 2010, and brought her home. He acknowledged that he went to S.M.S.’s house, but denied that he told her that he raped R.S. Defendant stated that he believed that David Morgan or Mark Morgan had raped R.S. He also stated that the day after J.S. took away his key to their house, she told him that R.S. was pregnant, to which he immediately responded that he was not the father. He further stated that J.S. told him that she would pay his house note if he did not say anything about R.S. being pregnant. He called R.S.’s school because he wanted “to get to the bottom” of the allegation that R.S. was pregnant. He denied having any problems with R.S. and could not explain why she would say that he raped her.
Det. Allday further testified that he investigated several of the allegations made by Defendant during his interview, including a claim that J.S. conspired to have Raymond Stokes sent to prison. Contrary to Defendant’s theory, he discovered that Raymond Stokes pled guilty to sexually assaulting a young child.
Det. Allday stated that, on June 20, 2012, police discovered a gun in Defenr dant’s vehicle that matched the description of the gun R.S. said Defendant possessed during the rape. - The gun was admitted into evidence without objection. However, on cross-examination, Det. Allday identified a receipt for the purchase -of the gun dated January 19, ,2012. He clarified that he did not have access to' the receipt prior to trial.
ImAlso on cross-examination, Det. Allday stated that he never' questioned David Morgan or Mark Morgan because R.S. only accused Defendant and S.M.S. of sexually abusing'her. ■ He did not attempt to retrieve alleged text messages sent by J.S. to Defendant because he did not have the resources needed to recover the deleted text messages at the time of the investigation. .
Outside the presence of the jury, the state gave reason^ for its objection to the receipt for the gun that was admitted during Det. Allday’s testimony. Specifically, the state claimed-.that it had-not received a copy of the receipt prior .to trial. Counsel for Defendant explained that he had just obtained a copy of the receipt that day.
Pastor James Green testified that J.S. approached him before the trial and told him that she had lied about Defendant raping R.S. He stated that J.S. told him that she asked the district attorney to drop the charges'‘against Defendant; but that the district attorney refused. He offered to go with J.S; to the' district attorney’s office the following Monday, but J.S. said she was leaving town before then and was never going to' return.
On March 13, 2015, the jury-by a vote of 10 to 2-found Defendant guilty as charged of aggravated rape.
*160 • • On March 20, 2015,- Defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial. He argued that the evidence presented at trial by the state failed to prove beyond a reasonable doubt that- he committed the offense of aggravated- rape. The trial court | T1 denied the motions, at a hearing on the same date, finding that the evidence presented at trial was sufficient to sustain the conviction.
On March.23, 2015, the trial court sentenced Defendant to the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.
Defendant now appeals.

DISCUSSION

Motion for Post-Verdict Acquittal

In his first-assignment of error, Defendant argues that the trial court erred-in denying his motion for post-verdict acquittal. He contends that the evidence presented at trial was insufficient to prove beyond a reasonable’doubt that he committed the crime of aggravated rape. He argues that the record contains no physical evidence that he raped R.S. He notes that, although Dr. Farrell determined that R.S.’s vagina had been penetrated, she could not determine when, how and by what object it was penetrated. He alleges, that, prior to meeting him, R.S. lived with two convicted sex offenders, i.e., Raymond Stokes and S.M.S., and suggests that one or both of these persons raped R.S. and caused the trauma to her hymen observed by Dr. Farrell. He further contends that the only evidence implicating him was the testimony of R.S., but alleges that her testimony was internally inconsistent and not supported by any physical evidence.
The state argues that the trial court properly denied the motion for post-verdict judgment of acquittal. It contends that the jury had the opportunity to hear and weigh the evidence at trial and that- sufficient [^evidence was presented to support the conviction of aggravated rape. It notes R.S.’s detailed testimony and states that Dr. Farrell’s expert testimony eorrob-orates R.S.’s allegations. It also contends that Principal Saucier’s testimony regarding Defendant picking R.S. up from school also supports R.S.’s testimony,
The standard-of appellate review for a sufficiency of the evidence claim is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could' have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 433 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992); State v. Smith, 47,983 (La.App.2d Cir.5/15/13), 116 So.3d 884. See also La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its' appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writ denied, 02-2595 (La.3/28/03), 840 So.2d 566, and writ denied, 02-2997 (La.6/27/03), 847 So.2d 1255, and cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004), citing State v. Tolliver, 35,930 (La.App.2d Cir.5/8/02), 818 So.2d 310, and State v. Bacon, 578 So.2d 175 (La.App. 1st Cir.1991), writ denied, 93-0694 (La.3/30/95), 651 So.2d 857. Likewise, the sole testimony of a sexual assault victim is *161 sufficient to support a requisite factual finding. State v. Watson, 32,203 (La.App.2d Cir.8/18/99), 743 So.2d 239, writ denied, 99-3014 (La.3/31/00), 759 So.2d 69. The testimony of one witness is sufficient to prove the elements of an offense even when the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).
The trier of fact makes credibility determinations and may-accept or reject the testimony of any' witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A reviewing court may not impinge on the fact finder’s discretion unless it is necessary to guarantee the fundamental due process of law. Id. The appellate court does' not assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing' court accords great deference to’ a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
La. R.S. 14:41 provides:
A. Rape is the act of anal, oral,, or vaginal sexual intercourse .with a male or female person committed without the person’s lawful consent.
|14B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
C. For purposes of this Subpart, “oral sexual intercourse” means the intentional engaging in any of the following acts with another person:
(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.
(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
La. R.S. 14:42(A)(4) defined aggravated rape[7] as follows:
A. . Aggravated rape is a rape committed ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
[[Image here]]
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
Viewing the evidence in the light most favorable to the prosecution, we find that the state presented sufficient evidence at trial to convict Defendant of the aggravated rape of R.S. At trial, R.S. testified that Defendant raped her vaginally and anally and also forced' her to perform oral sex on him/ R.S.’s testimony is direct evidence that proves every elemént of'the crime of rape. R.S. was born on March 16, 1998, and these | ¶ ¡¡events took place in October 2010, when she was 12 years old, thus *162 making this an aggravated rape pursuant to La. R.S. 14:42(A)(4),
The jury clearly chose to accept R.S.’s testimony as credible. The sole testimony of R.S. was sufficient to convict Defendant. State v. Watson, supra. Moreover, R.S.’s testimony was corroborated by physical evidence and the trial testimony of other witnesses. Dr. Farrell testified that her examination of R.S. indicated that R.S. had been penetrated vaginally. Principal Saucier’s trial testimony supported the time-line presented by R.S. S.M.S. testified that Defendant told her that he had raped R.S.
The evidence presented at trial was sufficient to sustain the conviction of Defendant. We find, therefore, that this assignment of error lacks merit.

Introduction of Handgun

In his second assignment of error, Defendant argues that the state committed reversible error by introducing into evidence a handgun, that had no connection to the charged crime, for the purpose of showing that Defendant behaved or acted in a certain way without affording him the benefit of a 404(B) hearing. He points out that, during cross-examination, Det. Allday admitted that the gun introduced at trial could not have been used during the rape of R.S. because it was. purchased after the alleged rape. Defendant notes that, during the state’s closing argument, the prosecutor stated that the gun was introduced to prove that it was Defendant’s pattern to carry such a weapon. Therefore, Defendant contends that he should have been afforded a 404(B) hearing prior to trial.
lu;The state argues that it was defense counsel’s trial strategy to' wait until- Det. Allday’s testimony to introduce the receipt proving that the gun recovered from Defendant’s vehicle could not have been used during the rape of R.S. It notes that Defendant did not contemporaneously object to the admission of the gun and, therefore, waived his right to argue the issue on appeal.
La. C. Cr. P. art. 841(A) states, in part, that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.”
La. C.E. art. 404(B)(1) states:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the. accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce .at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The state is required to prove .that the defendant committed these other crimes, wrongs or acts by clear and convincing evidence. State v. Jackson, 625 So.2d 146 (La.1993), citing State v. Davis, 449 So.2d 466 (La.1984). The probative value of the other crimes evidence must outweigh its prejudicial effect. La. C.E. art. 403.
A trial court’s ruling on the admissibility of other crimes evidence will not be .overturned absent an abuse of discretion. State v. Bruce, 47,055 (La.App.2d Cir.5/25/12), 93 So.3d 717, citing State v. Scales, 93-2003 [17(La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). The erroneous introduction of other crimes evidence is subject to harmless-error review. Id., citing State v. Roberson, 40,809 (La.App.2d *163 Cir.4/19/06), 929 So.2d 789. The Louisiana Supreme Court in State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, discussed the Louisiana harmless-error standard and stated that “appellate courts should not reverse convictions for errors unless the accused’s substantial rights have been violated.” The Johnson court noted that Louisiana has adopted harmless-error tests set forth by the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The inquiry in Chapman is whether it appears “beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” Chapman v. California, supra. The inquiry in Sullivan “is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattribqta-ble to the error.” Sullivan v. Louisiana, supra. The court must consider “not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.” Id.
Defendant is precluded from arguing on appeal about the admission of the gun because he did not contemporaneously object to its admission at trial. The record reveals that counsel for Defendant decided not to object to the introduction of the gun so that he could produce, via the cross-|i8examination of Det. Allday,' a receipt proving that the gun could not have been used by Defendant to rape R.S. because it was purchased after, the dates of the alleged rapes. The record also indicates that Defendant did not provide the state with a copy of the receipt prior to trial.
The gun admitted at trial matched the description.of the gun used by Defendant to-rape R.S. As. such; arid without knowledge of the receipt,- the state sought admission of the gun as possible evidence of R.S.’s rape and not as other crimes evidence.
Any error regarding the admission of the gun was harmless error. The verdict rendered in this case was not attributable to the admission of the handgun.. Defendant was charged with- aggravated rape pursuant to La. R.S. 14:42(A)(4), which applies when the victim is under the age of thirteen, not pursuant to La. R.S. 14:42(A)(3), which applies when the offender is armed with a' dangerous weapon. The jury clearly chose to accept R.S.’s testimony as credible. Further, the jury had the opportunity to consider the evidence presented by Defendant that the gun could not have been used by him during the rape of R.S. because he had not purchased that gun at' the -time of the alleged rapes.
Therefore) - this assignment of error lacks merit.

ERROR PATENT

A review of the record reveals that the trial court clearly explained Defendant’s. right to post-conviction relief. At the sentencing hearing, the trial court informed Defendant that he had two years to seek post-conviction relief. However, it did not make clear the fact that, pursuant to La. C. Cr. P.[19art. 930.8, the delay for filing post-conviction relief does not commence until -after a defendant’s conviction and sentence become final under- La. C. Cr. P. art. 914 or 922. The failure to properly, advise a defendant-regarding his right - to post-conviction relief is not grounds to vacate the sentence and remand for resentencing. State v. Cooper, 31,118 (La.App.2d Cir.9/23/98), 718 So.2d 1063, writ denied, 99-0187 (La.5/14/99), 741 So.2d 663. This court-hereby notifies *164 Defendant that he has two years from-the date that his conviction and sentence become final under La. C. Cr. *P. art. 914 or 922 to file any applications for post-conviction relief.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant, Kevin Porter, are affírméd. ■:■ ■ ■ *
AFFIRMED.

. To protect the privacy of the victim, she will be referred to by her initials, R.S., pursuant to ’La. R.S. 46:1844(W).

. Mr. Saucier noted that both men were on a list of persons who had permission to check R.S. out from school'.

.To protect the, privacy of R.S., her adoptive mother will be referred to by her initials, J.S.

.To protect the privacy of R,S., her biological mother will be referred to by her initials, S.M.S.

. Ms. Vrana was not involved in Defendant's case.

. A free and voluntary hearing was conducted ■ outside the presence of the jury prior to the admission of Defendant’s recorded statement.

. La. R.S. 14:42 was subsequently amended by Acts 2015, Nos. 184 and 256 to rename the crime of aggravated rape as "first degree rape." The statute was also amended to add Part E, which explains:
E. For all purposes, "aggravated’’rape” and. "first degree rape” mean the offense defined by the provisions of this Section and any reference to the crime of aggravated rape is the same as,a reference to the crime of first degree rape. Any act in violation of the'provisions of this’ Section committed on or after August 1, 2015, shall be referred to as "first degree rape”.