NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-521

STATE OF LOUISIANA

VERSUS

STEPHEN BRUNO

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 12-769
HONORABLE GREGORY P. AUCOIN, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.

AFFIRMED;
REMANDED WITH INSTRUCTIONS

Edward K. Bauman
Louisiana Appellate Project
P. O. Box 1641
Lake Charles, LA 70602-1641
(337) 491-0570
COUNSEL FOR THE DEFENDANT/APPELLANT:
    Stephen Bruno

Jeffrey M. Landry
Attorney General
Winston White
Assistant Attorney General
P. O. Box 94005
Baton Rouge, LA 70804-9005
(225) 326-6200
COUNSEL FOR APPELLEE:
    State of Louisiana
    Louisiana Attorney General's Office

**KYZAR, Judge.**

The defendant, Stephen Bruno, appeals from a jury verdict finding him guilty of six counts of aggravated rape of two juvenile victims, three counts of attempted aggravated rape of a juvenile, and three counts of molestation of a juvenile of three victims. For the reasons assigned herein, we affirm the convictions and remand the matter to the trial court with instructions.

## DISCUSSION OF THE RECORD

On March 19, 2013, the defendant was charged by bill of indictment with ten counts of aggravated rape, in violation of La.R.S. 14:42(A)(4). The victims of these offenses were T.G., a female who was between four and seven years old when the offenses were committed, and her cousin, J.G., a male who was between six and thirteen years old at the time the offenses.[1] The State subsequently added four counts of molestation of a juvenile, in violation of La.R.S. 14:81.2(A)(1). In addition to T.G. and J.G., the victims were Z.G. and J.W., both females who were between four and thirteen years old at the time of the offenses.

Each of the victims testified at the trial and described in varying detail the events which happened to them when they were minors. At the time of the offenses, the defendant was married to the aunt of T.G. and Z.G., who were sisters, and J.W. J.G. was the defendant's step-son. All of the victims identified the defendant as having committed various acts of rape and sexual molestation upon them, as will be discussed more directly below.

On September 17, 2015, the defendant was found guilty by a jury of three counts of aggravated rape of T.G., three counts of aggravated rape of J.G., three counts of molestation of a juvenile of J.G., Z.G., and J.W., and three counts of

---

[1] In accordance with La.R.S. 46:1844(W), we refer to the all of the victims in this case by their initials.

attempted aggravated rape of T.G. The defendant was also found not guilty of one count of aggravated rape of T.G. and one count of molestation of a juvenile of T.G. All of the verdicts were unanimous.

On November 24, 2015, the trial court sentenced the defendant to life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence, on each of the six aggravated rape convictions; to ten years at hard labor, without benefit of probation, parole or suspension of sentence, on each of the three attempted aggravated rape convictions; and to ten years at hard labor on each of the three molestation of a juvenile convictions. The trial court ordered the molestation of a juvenile sentences to run consecutively to each other and to the aggravated rape sentences. The remaining sentences were ordered to run concurrently to each other.

The defendant now appeals his convictions, raising three assignments of error:

I.   The evidence presented at trial was insufficient to find Stephen Bruno guilty of all charges.

II.  The trial court erred in denying Stephen Bruno's challenges for cause.

III. The record is incomplete thereby denying the right to full review on appeal.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find one error patent.

The minutes from the November 24, 2015 sentencing hearing and the sentencing transcript both indicate that the trial court informed the defendant that he had two years in which to file an application for post-conviction relief.

2

Louisiana Code of Criminal Procedure Article 930.8 provides that the defendant has two years *after the conviction and sentence become final* to seek post-conviction relief. In *State v. Conway*, 12-525 (La.App. 3 Cir. 11/7/12), 101 So.3d 1132, and *State v. Julien*, 13-1327 (La.App. 3 Cir. 5/21/14), 139 So.3d 1152, *writ denied*, 14-1406 (La. 5/15/15), 169 So.3d 383, this court found insufficient an advisement regarding the time for seeking post-conviction relief similar to the one given in this case. This error, however, does not require reversal of the defendant's conviction or sentence. *State v. Porter*, 50,380 (La.App. 2 Cir. 1/13/16), 185 So.3d 153. Therefore, the trial court is directed to inform the defendant of the provisions of La.Code Crim.P. art. 930.8, by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof into the record indicating that the defendant received the notice.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the defendant argues that there was insufficient evidence to support his twelve convictions. Specifically, the defendant argues that "the testimony given by the State's witnesses were inconsistent, uncorroborated, and did not prove that any crime occurred beyond a reasonable doubt." The defendant's entire argument is that the State's witnesses were not credible, and therefore, their testimony was not sufficient to support his convictions.[2]

The analysis for an insufficient evidence claim is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

---

[2] The defendant's sufficiency claim is based solely on the credibility of the witnesses and does not actually challenge whether the witnesses's testimonies, if believed, were sufficient to prove the elements of the each offense charged. Accordingly, we do not address the individual elements of each of the defendant's twelve convictions.

proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed. 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559, (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino v. King*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)).

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Additionally, in *State v. Darbonne*, 01-39 pp. 3-4 (La.App. 3 Cir. 6/6/01), 787 So.2d 576, 579 (footnotes omitted), *writ denied*, 02-533 (La. 1/31/03), 836 So.2d 64, this court specifically addressed the issue of a conviction for a sex offense based solely on victim testimony:

> Absent internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony is sufficient to support a defendant's conviction of a sex offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. Additionally, this court has affirmed convictions, where the defendant was convicted of a sex offense, based solely on minor victims' testimonies.

This court has previously stated that "discrepancies in factual testimony which require a determination of the witnesses' credibility go to the weight of the evidence, not its sufficiency." *State in re J.A.*, 15-641, p. 3 (La.App. 3 Cir. 12/2/15), 179 So.3d 959, 961, *writ denied*, 15-2317 (La. 3/4/16), 188 So.3d 1058. The defendant, despite noting that witness "credibility is not ordinarily reviewed on appeal," argues, without citing supporting jurisprudence, that such testimony can occasionally be "so incredible as to merit review and ultimate acquittal under *Jackson*." He claims that this is the case here. We disagree.

T.G., who was seventeen at the time of the defendant's trial, stated that although she was unsure exactly how old she was when the incidents with the

4

defendant occurred, she believed she was younger than seven or eight. She was able to recall that she was in elementary school and the name of her school at the time. She testified that on one occasion the defendant took her into a bathroom at his house and "made [her] suck his penis." She testified that she woke up in a chair, naked, later that night and that the defendant was masturbating and ejaculating on her. She also stated that the defendant took her into the bedroom the following day, put her on all fours, had vaginal intercourse with her from behind, and then put a "toy" in her vagina.

T.G. also described multiple events that occurred around the same time, when the defendant and his family were staying with her family. She described an event where the defendant took her into the back room, put her on her hands and knees, and had vaginal intercourse with her from behind while he was watching pornography. Afterwards, she described the defendant using her hands to play with his penis, making her suck his penis, and then putting his mouth on her vagina. T.G.'s mother testified at the trial and confirmed that the defendant and his family did live with them for a period of time.

T.G. also described an incident that occurred while she was using the bathroom at her grandmother's house, when the defendant entered with her sister, Z.G., and made Z.G. "pull her drawers down and lay down while he masturbate[d] and watch[ed] her." T.G. stated that the defendant also touched her vagina while she was sitting on the toilet. T.G. stated that she told no adults about these incidents because she was "embarrassed, scared" and did not want to get her cousin's father sent to jail. However, she admitted that she and her cousins talked about them a lot when they were young.

T.G. testified that she could not recall exactly what she told the counselor at Hearts of Hope, a facility where the victims were interviewed during the investigation. She said that she was nervous during the interview and did not really understand the questions the counselor was asking her. T.G. admitted that she did not tell the counselor everything because she "wouldn't be able to come out with it to [her] own family so why would [she] just sit there and talk to a person like, you know, [she] barely even know [sic] about [her] situation." She also testified that when she told the counselor that her aunt was the first person she told about the incidents, she meant that her aunt was the first adult she told.

Z.G., T.G.'s older sister, testified that the defendant would take her into a room, make her undress, and then would touch around her vagina with his fingers. Z.G. also described an incident where the defendant took her into the kitchen of his house, pulled her pants down, and took pictures with a camera. Z.G. also testified that while the defendant and his family were staying with her family, the defendant would come into the bathroom with her and make her "jack him off," before he would ejaculate on the floor. That the defendant and his family lived with Z.G. and T.G.'s family for a period of time was confirmed by several other witnesses during the course of the trial.

Z.G. testified that she told no adults about the defendant's actions because she was young and scared. She stated that she initially told her aunt that no one had touched her because she "didn't want her to know about it," but then she admitted the defendant's actions once she realized that her aunt already knew. Z.G. could not recall exactly how old she was when these events occurred; but she testified, unequivocally, that she was under the age of seventeen, as she was only eighteen at the time of trial.

6

J.W. testified that the defendant would call her into the bathroom at her grandmother's house in New Iberia, make her pull down her pants, and then would masturbate in front of her. She further stated that she was in elementary school at the time and that she told no one about these incidents prior to telling her aunt because she was scared of the defendant. She became emotional during this portion of her testimony, sobbing and stating "he was mean" and that she was always "scared of him." J.W. stated that the defendant never actually touched her and that while she remembered previously testifying in court, she could not remember what had occurred. She finally said that she remembered telling an officer that she was about seven years old when the incidents started and about nine years old when they stopped.

J.G., the defendant's former stepson, testified that from the time he was six years old and until he was about fourteen, the defendant would touch his genitals and make him perform oral sex on him. J.G. stated that this happened so often that he could not say exactly how many times it occurred. He also testified that the defendant penetrated him anally when he was approximately ten years old. J.G. stated that there were never any adults around when these incidents happened, and on a few occasions, he walked in on the defendant touching himself while Z.G. was using the restroom. On those occasions, he stated that the defendant would tell him to get out and threaten to beat him. J.G. testified that he only told his mother about the incidents because she specifically asked him about them. He said that he would have taken it to his grave had she never questioned him about the defendant. J.G. admitted that he moved in temporarily with the defendant and his new wife, when he was a senior in high school. He explained that he had moved

7

on from the incidents and that he felt safe because the defendant's wife was usually at home.

As previously stated, the defendant's entire argument is that the testimony given by the victims is so incredible that it merits "review and ultimate acquittal under *Jackson.*" This argument lacks merit for several reasons. Initially, we note that the defendant's argument is based on his claim that the victims' trial testimonies differed from their statements to the counselor at Hearts of Hope. However, we find no merit with this argument because none of the recorded statements were shown to the jury or admitted into evidence. Although defense counsel attempted to impeach Z.G. with her recorded interview, the trial court denied the request to publish the recording unless the entire interview was published to the jury, which defense counsel refused to do.[3] Defense counsel ultimately proffered Z.G.'s recorded interview. However, since the defendant has failed to assign as error the trial court's failure to admit the recording into evidence, we will not consider any of the alleged inconsistent statements made by the victims during those recordings.

The defendant's remaining argument consists of little more than inconsistencies, which were explained during the victims' testimonies. The inconsistency between T.G.'s statement to the counselor that her aunt was the first person to learn about the incidents, and her trial testimony, that it was discussed by all of the cousins prior to her aunt's discovery, was clarified when T.G. explained that she meant that her aunt was the first adult to learn about the incidents.

---

[3] Defense counsel objected to the trial court's denial of her request to show only a portion of the video, claiming that it forced her to choose between impeaching the witness and incriminating the defendant with "other crimes" evidence, as the video included a claim that he molested his own daughters.

Additionally, the defendant focused on the fact that both T.G. and J.G. testified that they were each present at least once when he was masturbating over Z.G., while Z.G. testified that this occurred only when they were alone. While a discrepancy does exist between these and other statements, we find that it can easily be explained based on the embarrassment and/or fear of the defendant expressed by all of the victims, coupled with the approximately ten years between the incidents and the trial.

Moreover, the defendant has cited no case in support of his argument that multiple witnesses, testifying between the ages of seventeen and twenty regarding events that happened more than a decade beforehand, should be disregarded because of minor inconsistencies in their testimonies. We have previously stated that "[t]his court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way." *State v. Hypolite*, 04-1658, p. 5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381. There is nothing in the record that suggests that the witnesses' own abilities to perceive events were in any way impaired. To the contrary, much of the testimony of each witness as to various facts was confirmed by the testimony of other witnesses. Accordingly, we find that the defendant has failed to establish any reason why we should second guess the jury's credibility determinations of the victims in this matter.

Considering our finding regarding the jury's credibility determinations and the evidence presented at trial through the victims' testimonies, and after reviewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found that the defendant committed aggravated

rape through anal, oral, or vaginal sexual intercourse on multiple occasions with victims who were under the age of thirteen, a violation of La.R.S. 14:42(A)(4). We further find that any rational trier of fact could have found that the defendant, on three occasions, committed attempted aggravated rape through attempted anal, oral, or vaginal sexual intercourse with a victim who was under the age of thirteen, a violation of La.R.S. 14:27 and La.R.S. 14:42(A)(4). Additionally, we find that any rational trier of fact could have found that the defendant, who was over the age of seventeen, committed molestation of a juvenile when he performed lewd or lascivious acts upon victims under the age of seventeen, with the intention of arousing or gratifying his sexual desires by the use of influence by virtue of his position of control or supervision over the victims, in violation of La.R.S. 14:81.2(A)(1). Accordingly, the defendant's first assignment of error is denied for lack of merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the defendant argues that the trial court committed reversible error when it denied his challenges for cause of two potential jurors, namely Suzanne Dugas and Brenda Langlinais. The defendant challenged both potential jurors for cause on the basis that they expressed reservations regarding their ability to ignore his decision not to testify on his own behalf. The trial court ruled that the State sufficiently rehabilitated both potential jurors and denied the defendant's challenges for cause, forcing him to use his two final peremptory challenges on Ms. Dugas and Mrs. Langlinais.

"Prejudice is presumed when a challenge for cause is denied erroneously by the trial judge and the defendant has exhausted all of his peremptory challenges." *State v. Hart*, 96-697, p. 7 (La. 3/7/97), 691 So.2d 651, 656. In order to prove his

10

claim, the defendant "need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges." *Id.* The transcript shows that the defendant used his final two peremptory challenges to remove the potential jurors at issue in this assignment of error. Accordingly, the only issue that remains is whether the trial court erroneously denied the defendant's challenges for cause regarding Ms. Dugas and Mrs. Langlinais.

As this court recently noted in *State v. Washburn*, 16-335, p. 14 (La.App. 3 Cir. 11/2/16), __ So.3d __, __, reviewing courts must be "mindful that trial courts have wide discretion in determining whether to reject a juror for cause, and those determinations cannot be disturbed absent an abuse of discretion." Ms. Dugas and Mrs. Langlinais both initially indicated that they would either need or want to hear the defendant testify in order to find him innocent. However, both potential jurors also stated that they understood that the defendant's presumption of innocence meant that he did not have to testify, as it was the State's burden to prove him guilty. They agreed that they could and would follow the law in deciding the case and that they could decide the case based solely on the evidence presented. The trial court found that this was sufficient to rehabilitate the two potential jurors; thus it denied the defendant's challenges for cause. In addition to the verbal assurances of the potential jurors, the trial court was in the unique position to see and hear the manner in which each juror responded during their rehabilitation by the State. Several other challenges for cause by the State and the defendant had been granted during the course of jury selection. Thus, we cannot conclude that the trial court abused its "wide discretion" in denying the challenges for cause as to Ms. Dugas and Mrs. Langlinais. Accordingly, we find that the defendant's assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In his final assignment of error, the defendant argues that he has been denied his right to full appellate review due to several instances of ambiguity in the *voir dire* transcript. The defendant cites *State v. Landry*, 97-499 (La. 6/29/99), 751 So.2d 214, for his argument that the trial court must provide an adequate record and that an inadequate record entitles a defendant to a new, fully-recorded trial. He also cites *State v. Spears*, 08-831 (La.App. 3 Cir. 3/4/09), 8 So.3d 119, noting that one of the issues in *Spears*, which led to the defendant receiving a new trial, were the multiple references in the *voir dire* transcript to potential jurors as merely "Potential Juror." In response, the State's argues that while there were a few occasions wherein jurors were referred to as "Potential Juror," the vast majority of the transcript identifies who was speaking. It further notes that the defendant failed to point out a single instance where the failure to name a potential juror had an actual effect on the trial court's alleged error in denying his two peremptory challenges for cause.

For the following reasons, we find no merit in this assignment of error.

Louisiana Constitution Article 1, § 19 ensures a defendant's "right of judicial review based upon a complete record of all evidence upon which the judgment is based." *See also* La.Code Crim.P. art. 843 (which provides, in part, that "[i]n felony cases, . . . the clerk or court stenographer shall record all of the proceedings. . . ."). However, the Supreme Court of Louisiana has explained that a defendant is not entitled to relief on the basis of an incomplete record "absent a showing that he was prejudiced by the missing portions of the record." *State v. Draughn*, 05-1825, p. 63 (La.1/17/07), 950 So.2d 583, 625, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). Further, slight inaccuracies in the record or inconsequential omissions which are immaterial to a proper determination on appeal are not cause for the reversal of a defendant's conviction. *Id.* Rather, even an incomplete record may be adequate for appellate review. *Id.*

*State v. Duraso*, 12-1463, 12-1465, pp. 11-12 (La.App. 3 Cir. 12/11/13), 127 So.3d 1015, 1023, *writs denied*, 14-50, 14-74 (La. 6/20/14), 141 So.3d 286.

The issue, therefore, is whether the defendant was prejudiced by the failure of the *voir dire* transcript to positively identify the speaker every time a potential juror spoke. We find that no such prejudice occurred in this case. The defendant points to no specific instance where the words of an unidentified speaker would have affected his argument regarding his challenges for cause of Ms. Dugas or Mrs. Langlinais. Furthermore, there is no instance where the dialogue with an unidentified speaker affected our analysis of the defendant's second assignment of error, even if it could be attributed to the potential jurors in question. Accordingly, we find that the defendant has failed to establish that he was prejudiced by the slight inaccuracies or inconsequential omissions contained in the trial court's *voir dire* transcript. Thus, this assignment of error is without merit.

## DISPOSITION

The defendant's convictions and sentences are affirmed; however, the trial court is ordered to inform the defendant of the provisions of La.Code Crim.P. art. 930.8, by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof into the record indicating that the defendant received the notice.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.