NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-927


STATE OF LOUISIANA

VERSUS

ELSA RANGEL


**\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 14-342
HONORABLE KEITH R. J. COMEAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\***

VAN H. KYZAR
JUDGE

**\*\*\*\*\*\*\*\*\***

Court composed of D. Kent Savoie, Van H. Kyzar, and David E. Chatelain,[*] Judges.


AFFIRMED IN PART;  REVERSED IN PART;
AND REMANDED WITH INSTRUCTIONS.

---

[*]    Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

Edward K. Bauman
Louisiana Appellate Project
P. O. Box 1641
Lake Charles, LA 70602-1641
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
     Elsa Rangel

M. Bofill Duhé
District Attorney
W. Claire Howington
Assistant District Attorney
Sixteenth Judicial District
300 Iberia Street, Suite 200
New Iberia, LA 70560
(337) 369-4420
COUNSEL FOR APPELLEE:
     State of Louisiana

**KYZAR, Judge.**

The defendant, Elsa Rangel, appeals from her conviction and sentences for two counts of felony theft, in violation of La.R.S. 14:67, and one count of filing or maintaining false public records, in violation of La.R.S. 14:133. For the reasons set forth herein, we affirm in part, reverse in part, and remand for resentencing with instructions.

## PROCEDUARAL HISTORY

On March 12, 2014, the defendant was charged by bill of information with one count of theft of property valued at $1,500.00 or more, occurring on or about June 1, 2013, a violation of La.R.S. 14:67(B)(1). The defendant pled not guilty to the charge on April 8, 2014. Thereafter, on November 2, 2015, the State filed an amended bill of information, charging the defendant with one count of filing or maintaining false public records, a violation of La.R.S. 14:133, one count of theft of property valued at $1,500.00 or more, occurring on or about January 1, 2013 through June 15, 2013, and one count of theft of property valued at $1,500.00 or more, occurring on June 3, 2013, both violations of La.R.S. 14:67(B)(1).[1] The defendant pled not guilty to the amended bill of information that same day.

Following a two-day jury trial, the defendant was found guilty as charged on all three counts. Subsequently, on May 23, 2016, the trial court sentenced the defendant to five years at hard labor, suspended, and five years of supervised probation. This appeal followed.

---

[1] The present offense was committed in 2013, at which time the threshold amount for committing the most severely punishable theft was $1,500.00. La.R.S. 14:67(B)(1). In 2014, however, the legislature significantly changed the threshold amounts. 2014 La. Acts. No. 255, § 1. Because of the commission date of the thefts involved in the present case, the defendant was appropriately charged under the law in effect in 2013.

## ASSIGNMENT OF ERROR

In her sole assignment of error, the defendant asserts that the evidence was insufficient to convict her of all three counts. The defendant contends that the State failed to prove all necessary elements of the charge of filing or maintaining false public records, and that it failed to prove her identity as the person who committed the two counts of theft.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find two errors patent.

The defendant was convicted of three offenses. However, the trial court only imposed one sentence on the defendant and failed to indicate on which offense the sentence was imposed. Thus, the trial court imposed an indeterminate sentence, which should be vacated and the matter remanded for resentencing. "Where the trial court has imposed one sentence for multiple counts, this court has previously set aside the defendant's sentence on those counts as indeterminate and remanded the case to the trial court for resentencing on each count." *State v. Grace*, 10-1222, p. 19 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, 825-26, *writ denied*, 11-961 (La. 10/21/11), 73 So.3d 382 (citing *State v. Monceaux*, 04-449 (La.App. 3 Cir. 10/20/04), 885 So.2d 670). Therefore, this matter will be remanded to the trial court for resentencing so that a determinate sentence may be imposed on the defendant.

Additionally, at the conclusion of sentencing, the defendant was advised that she had two years in which to file an application for post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8 provides that a defendant has "two years after the judgment of conviction and sentence has become final" to

2

apply for post-conviction relief. In *State v. Conway*, 12-525 (La.App. 3 Cir. 11/7/12), 101 So.3d 1132, and *State v. Julien*, 13-1327 (La.App. 3 Cir. 5/21/14), 139 So.3d 1152, *writ denied*, 14-1406 (La. 5/15/15), 169 So.3d 383, this court found insufficient an advisement regarding the time for seeking post-conviction relief similar to the one given in this case. This error, however, does not require reversal of the defendant's conviction or sentence. *State v. Porter*, 50,380 (La.App. 2 Cir. 1/13/16), 185 So.3d 153. Therefore, the trial court is directed on resentencing to inform the defendant of the provisions of La.Code Crim.P. art. 930.8.

## DISCUSSION OF THE RECORD

The defendant was engaged by several organizations to oversee and make deposits for bingo sessions at the Bon Temps Bingo Hall ("Bon Temps") in 2013. Bon Temps, like all charitable bingo establishments in the state, is governed by the rules and regulations of the Office of Charitable Gaming for the State of Louisiana. The manager of the bingo hall discovered that the defendant was not making timely deposits of the net proceeds from bingo games for all of the organizations that sponsored bingo sessions at the hall. Ultimately, it was determined that over $16,000.00 had been taken from the organizations.

Linda Anson, retired Director of the Lafayette Teen Court and Iberia Teen Court, testified at the trial. She oversaw the management of Bon Temps until June 30, 2013, and thereafter, purchased it effective July 1, 2013. The Lafayette and Iberia Teen Court programs were public service programs to aid first-time juvenile offenders. Anson stated that she hired the defendant to work as Assistant Director of the Iberia Teen Court program and to work for Bon Temps as well. Bon Temps ran bingo games for area non-profit and charitable organizations as a money making source for the organizations. She specifically stated that Bon Temps ran

3

bingo games for the Lafayette and Iberia Teen Courts, Acadiana Special Volunteers (ASV), the Lyons Club, and Veterans of Foreign Wars (VFW). The defendant's job with Bon Temps was to secure $200.00 in seed money per bingo session from each of the various organizations. In doing so, the defendant would secure checks from each organization twice a month to cover the number of sessions the organization was paying for that month. For example, if VFW was holding sixteen sessions in the month of May, it would send two checks payable to the defendant for $800.00 for the first half of the month and $800.00 for the second half of the month. This was verified by Hillary Hill, the Quarter-Master for VFW Post 3803, who testified that the post also paid the defendant to deposit its net proceeds from the bingo games into its bank account.

The defendant was responsible for cashing the semi-monthly checks and then maintaining the funds in each organization's locker until the $200.00 increments were required to seed each bingo session. At the conclusion of a session, the profits were tallied and accounted for using paperwork provided by Bon Temps, with the net proceeds deposited into the sponsoring organization's bank account. Anson stated that the defendant was paid by each organization to deposit their net proceeds from the bingo sessions into their accounts.

In late May or early June 2013, Anson testified that she received a call from a Lyons Club representative, who was upset because its May deposits had not been deposited into its account. The representative indicated to Anson that he confronted the defendant about the missing deposits and that she showed him a money bag she claimed contained the Lyons Club's deposits that she was going to make. He reported that the defendant did make a portion of the deposits due to the Lyons Club, but that not all of the money it was owed from its sessions was deposited. After this discussion, Anson stated that she began an investigation and

4

discovered that a total of $16,222.00 was missing from the accounts of the sponsoring organizations.

Anson testified that her investigation determined that all of the organizations were missing deposits and session money. Specifically, she testified that the Iberia Teen Court was missing deposits for two days in April, eleven days in May, and three days in June, 2013, totaling $5,841.00. She also determined that Iberia Teen Court was missing session money totaling $1,600.00. Anson testified that Lafayette Teen Court was missing a deposit for June 3, 2013, totaling $418.00, and session money totaling $1,600.00. She stated that the Lyons Club was missing deposits for four days in May and two days in June 2013, totaling $2,851.00, and session money totaling $1,000.00. She said that the VFW was missing a deposit for June 2, 2013, totaling $432.00, and session money totaling $1,600.00. Finally, she stated that ASV was missing session money totaling $600.00.

Anson testified that she and representatives from all the organizations confronted the defendant about these discrepancies on June 6, 2013. She stated that the defendant told them that she indeed had the money for the deposits at her office at the Iberia Teen Court, but was unable to locate it when she and one of the representatives went to retrieve it. Anson testified that the defendant then admitted that she did not have the money because she had used it to cover earlier deposits after she discovered that money was missing from her locker. She claimed that this occurred after she gave her locker combination to an employee, who was picking up an organization's money.

Anson testified, however, that the theft of the money in question occurred over a period of time, as there was not enough money on hand at a given time to account for the missing amount. Further, she stated that four of the five organizations were missing money from deposits that never occurred. Anson said

that the only organization not missing deposit money was ASV, although it was missing session money. She testified that the defendant was the only person responsible for depositing the session proceeds. Anson testified that initially, the defendant offered to pay back the missing money from money her sister was wiring her. However, she stated that the defendant never paid back the money because the money was never received from her sister. Anson testified that she contacted Kevin McNicoll, with the Louisiana Office of Charitable Gaming, to report the theft.

McNicoll, a Special Investigator for the State of Louisiana Office of Charitable Gaming, testified that he confirmed the amount of money taken after reviewing the records from the bingo hall and the deposits made by the defendant. He described the defendant's actions as deposit kiting, where money taken from a game is covered by the proceeds of a later game. He stated that this continues until the gap between the actual earnings and the actual deposits becomes so large that people notice. He stated that this is exactly what happened in this matter. According to McNicoll, the law allows a person a maximum of five days to make a deposit after a game. Normally, he stated that deposits are made within three banking days.

Loretta Richard, with ASV, testified that ASV used Bon Temps for bingo sessions to raise money for its charitable work. She stated that she normally mailed a check twice a month to the defendant for the start-up money for each session and that it was the defendant's job to make sure there was session money on hand. Richard testified that she had never been notified that ASV lacked start-up money for its sessions. She described the defendant's job duties as managing the bingo hall, making sure all of the state paperwork was accurate, making timely deposits, and supervising callers. According to Richard, the defendant had the

6

ultimate responsibility for making sure everything balanced and all the money was deposited.

Richard testified that she first noticed that the deposits were late in March, at which time the deposits were extremely late, "[l]ike, six, seven, ten days late." During the June 6, 2013 confrontation with the defendant, she confirmed that the $600.00 in session money sent by ASV at the first of June was missing. She further stated that she accompanied the defendant to her office at the New Iberia Teen Court to check for the missing money, which was not there.

Hannah Guillotte, a bingo caller for Bon Temps, testified that each organization had a locker at the bingo hall, to which all of the callers knew the combinations. She stated that the defendant also had a locker for the deposit slips and money, to which only she had access. Guillotte testified that including herself, only four callers worked between January and June 2013, the other three being: Dalana Boutte, Travis Frazier, and the defendant, who called games in addition to her supervisory duties. She stated that two to three times a month she would not have the start-up money needed for a bingo session. On those occasions, she said that she would text the defendant, who instructed her to use another organization's start-up money or to use the deposits that were on hand.

Ms. Guillotte testified that the defendant, who was her and the other callers' supervisor, was responsible for ensuring that the deposit sheets and money were correct. She denied that it would be possible for someone to alter the deposit amounts on the manager session sheets, because the deposit amounts were derived from inventory sold during the session. She further stated that the defendant was responsible for checking these amounts.

Guillotte stated that after each bingo session the caller would count the money, fill out the deposit slip, and then place both in the sponsoring

7

organization's locker. She said that the defendant made deposits twice a week into the organizations' bank accounts and that she would know immediately if money was missing from a deposit. She stated that on two occasions, the defendant informed her that her session was short $100.00, which amounts she paid back.

Guillotte remembered that as a result of the organizations' June 6, 2013 confrontation with the defendant, she had to write a statement concerning the missing money. According to her, the defendant told her to state the following about Travis Frazier, another caller: "That he didn't work a lot but it was just suspicious that he had a lot of money and stuff." During questioning by defense counsel, Guillotte testified that she helped Frazier on numerous occasions with his paperwork. She further testified that one of her friends, who dated Frazier, warned her to watch him because he "had stole or something like that."

Frazier testified that the defendant, who was his supervisor at the bingo hall, was responsible for all the money at Bon Temps. He stated that anytime he called a session the start-up money was always waiting for him in the office, where the lockers were located. He said that he did not believe that he had the combination for the defendant's locker or that he ever had occasion to go into her locker. However, Frazier thought that he had the combinations for all of the organization lockers. At the end of each session, he stated that he counted the money, usually with the help of a co-worker or the defendant, filled out the session paperwork, and left the money and paperwork in the sponsoring organization's locker or with the caller for the next session. He denied that he took money from the bingo hall. He explained that anytime his session was short, he covered the shortfall with his own money. He estimated that this had occurred three times. Frazier testified that he confronted another caller, Dalana Boutte, about $150.00 that was missing, and that she became defensive.

8

Boutte testified that the defendant was her direct supervisor at the bingo hall. She stated that she has begun sessions with $100.00 in start-up money, and that anytime she lacked money, she contacted the defendant for permission to take money from a deposit. Although she recalled the June 6, 2013 confrontation between the organizations and the defendant, Boutte testified that she was never confronted about the missing money. She stated that none of her sessions ever came up short and that the defendant never discussed the missing money with her. After each session, Boutte testified that she counted the money from the session, prepared the session report, and then placed the money and deposit slip in an envelope, which she placed in the organization's locker so the defendant could make the deposit. She stated that she never made deposits for any of the organizations; the defendant made all of the deposits.

**OPINION**

In her only assignment of error, the defendant argues that that there was insufficient evidence to support the convictions for each of the two theft counts and the conviction for the filing or maintaining of false public records charge. The analysis for insufficiency of the evidence claims is well-settled.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371

***Thefts of $1,500.00 or more***

The defendant argues that the evidence was insufficient to find her guilty of the two counts of theft of $1,500.00 or more.

We note that the defendant does not contest that the elements of theft were proven in this case. Rather, she contests the State's identification of her as the one who committed the thefts. We disagree, finding that the evidence was sufficient to prove that she was the person who committed the thefts. The evidence at trial showed that the defendant was responsible for maintaining both the start-up money forwarded by the organizations and making deposits for the session pay-outs for the organizations sponsoring the bingo sessions. The thefts in this case were accomplished by a scheme of late deposits, ultimately culminating in over $16,000.00 in missing money. According to McNicoll, the Special Investigator, this scheme, known as "kiting deposits," entailed a person taking money from a game and then covering that deposit by money earned from a later game. The only person identified at trial as being responsible for making these deposits was the defendant. She was also responsible for managing the start-up money as the checks were made out to her so that she could cash the checks and place the money in the designated organization's locker until it was needed for a particular session. If session money for a particular session was short, she would have known immediately; however, no report of missing money was made until the Lyons Club representative reported the defendant's failure to deposit its profits to Anson. Furthermore, when confronted about the missing deposits, the defendant attempted to cover them up by stating that the money was at her office, which proved to be untrue. Additionally, she claimed that her sister was going to wire her the money to pay back the missing amount. Considering the evidence, the jury rationally

10

concluded that the defendant was the person who committed the thefts in the present case.

At trial and on appeal, the defendant's hypothesis of innocence was that because many people had access to the money stolen, the State failed to prove that she was the one who took it. Obviously, the jury rejected this hypothesis of innocence. In *State v. Calloway*, 07-2306, p.10 (La. 1/21/09), 1 So.3d 417, 422, the supreme court stated the following regarding a jury's rejection of a defendant's hypothesis of innocence:

> [W]e have repeatedly cautioned that due process, rational fact finder test of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict. *See, e.g., State v. ex rel. Graffagnino v. King*, 436 So.2d 559, 559 (La.1983). A reviewing court may intrude on the plenary discretion of the fact finder "only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988) (footnote and citation omitted). Thus, as Judge Pettigrew emphasized, when a jury reasonably and rationally rejects the exculpatory hypothesis of innocence offered by a defendant's own testimony, an appellate court's task in reviewing the sufficiency of the evidence under the Due Process Clause is at an end unless an alternative hypothesis "is sufficiently reasonable that a rational juror could not 'have found proof of guilt beyond a reasonable doubt.' " [*State v.*] *Captville*, 448 So.2d [676,] 680 [(La.1984)] (quoting *Jackson*, 443 U.S. at 324, 99 S.Ct. at 2792).

Likewise, the jury's rejection of the defendant's hypothesis of innocence in the present case was based upon its rational credibility and evidentiary determinations. The defendant claims that the money could have been taken by any of the numerous people that had access to the money. However, the bingo callers testified that the defendant let them know right away if a deposit from a session earning was short and they were required to pay back the shortage. Thus, it is unlikely that one of the callers would have been taking money from the session earnings. Even if any or all of the callers, other than the defendant, took money

11

from any bingo session or sessions, the defendant would have known within a day or two when she made the deposits. Moreover, even if someone had access to the defendant's locker, Anson stated that the defendant would never have had over $16,000.00 in her locker at one time. It was further evident that the thefts occurred over a period of time from each of the organizations and not on just one occasion. Finally, the defendant never reported that any money was missing either from the session earnings or from the start-up money in her locker. We find that there is no reasonable hypothesis of the defendant's innocence given the facts of this case. Accordingly, we affirm the jury's verdicts of guilty as to the two counts of theft.

### Filing or Maintaining a False Public Record

The defendant further claims that the evidence was insufficient to convict her of filing or maintaining a false public record since the trial court did not allow the minutes of her prior conviction to be admitted into evidence. Without this evidence, the defendant asserts that the State was left with no evidence that she provided false information on her license application to the Office of Charitable Gaming. We agree. The State concedes that the minutes of the defendant's previous conviction were not admitted into evidence as it never addressed the defendant's claim in regards to maintaining a false public record conviction.

Louisiana Revised Statutes 14:133(A) provides:

Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:

(1) Any forged document.

(2) Any wrongfully altered document.

(3) Any document containing a false statement or false representation of a material fact.

12

In its opening statement, the State asserted that the defendant lied on a license renewal application submitted to the state by one of the organizations seeking to continue its operation of a bingo for charity. According to McNicoll, the application was filed in his office and was part of the official record for the organization's license application. He stated that on the May 2, 2013 application, the defendant answered "no" when asked if she had previously been convicted of a crime. Although the State attempted to introduce the court minutes of the defendant's March 30, 2000 conviction for possession with the intent to distribute marijuana, the trial court ruled the evidence inadmissible due to the State's failure to timely disclose the minute entry to the defense. No other evidence of the defendant's prior conviction was introduced. Thus, we find that the State failed to prove that the defendant filed or maintained a false public record by failing to disclose a prior conviction on the Office of Charitable Gaming license application. Accordingly, we reverse the jury's verdict on that count.

## DISPOSITION

For the reasons set forth herein, we affirm the defendant's convictions for two counts of theft in excess of $1,500.00, but we reverse the defendant's conviction for filing or maintaining false public records. We further remand the matter to the trial court for resentencing to impose a determinate sentence for the two theft convictions and to inform the defendant that she has two years from the finality of the convictions to apply for post-conviction relief pursuant to the provisions of La.Code Crim.P. art. 930.8.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.